UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:16-CR-45-DCR-1

UNITED STATES OF AMERICA,                                                    PLAINTIFF,

V.                              **RECOMMENDED DISPOSITION**

CHARLES E. JOHNSON, JR.,                                                     DEFENDANT.

The defendant, Charles E. Johnson, Jr., stands convicted of Securities Fraud, in violation of Title 15 U.S.C. §§ 78j(b) and 78ff, 17 CFR § 240.10b-5, and 18 U.S.C. § 2; Tampering with a Witness, in violation of 18 U.S.C. § 1512(b)(3); Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2); and Conspiracy, in violation of Title 18 U.S.C. § 371. On November 14, 2008, he was sentenced by the Honorable Liam O'Grady, United States District Judge for the Eastern District of Virginia, to a term of 108 months of imprisonment to be followed by three years of supervised release. In addition, Johnson was ordered to pay a $400 special assessment fee and restitution in the amount of $9,700,000. Although his special assessment has been paid, he has paid only $10,729.38 toward his restitution obligation. His supervision was transferred to Honorable Danny Reeves, United States District Judge for the Eastern District of Kentucky, on May 16, 2016. [R. 1].

Presently, a report from Johnson's supervising officer dated March 29, 2019 and an addendum of April 4, 2019, allege that Johnson is in violation of his terms of supervision. The report and addendum allege that on September 13, 2018, $100,000 was transferred into his personal bank account and then to an account at the Wynn Casino in Las Vegas, Nevada. In addition, on December 17, 2018, a payment of $200,000 from Dr. Harry Lockstadt was posted into

the defendant's personal account at Central Bank, and the report alleges that forensic analysis of the relevant transactions shows that $25,000 of the payment was ultimately transferred to the defendant's gaming account at the Wynn Casino on December 28, 2018.

According to the records from the Wynn Casino in Las Vegas, the defendant's personal gaming account shows a loss of $442,190 in 2018, and $34,675 in 2019. Johnson failed to disclose the casino account or substantial gambling losses in his disclosures to his supervising probation officer. As a result of this conduct, it is charged that the defendant has committed four violations of the conditions of his supervision due to making false and fraudulent statements to his supervising officer regarding his assets and expenditures.

On April 12, 2019, Johnson appeared before the undersigned for an initial appearance on the alleged violations. [R. 19]. At that time, Johnson's counsel raised the issue of a potential conflict which might lead the presiding judge to recuse from further duties in this matter. Counsel was directed to file a memorandum outlining the basis of any conflict affecting the presiding judge or any other judge within the Eastern District of Kentucky. [R. 19]. In response, defendant tendered a "Notice of Filing", which did not specifically seek recusal of the presiding judge, and maintained that no fact or circumstance exists actually requiring recusal. [R. 22]. Subsequently, the matter was scheduled for a hearing before the undersigned, with the direction that counsel for Johnson be prepared to "state clearly, completely and for the record any issue that he believes creates a conflict requiring the presiding judge's recusal, with supporting factual and legal authority." [R. 26]. At the hearing, counsel for both the defendant and the United States were present, and the parties presented arguments on the issue. The salient facts for consideration can be summarized as follows:

1. Between the dates of October 13, 2017 and December 15, 2017, the defendant, through an associated company, Curare Medical, LLC, consulted with the firm of Stoll Keenon Ogden, PLLC, [Stoll] in Lexington, Kentucky regarding various issues that are admittedly unrelated to the facts forming the basis of the current alleged violations. [R. 22-1]. Of the 148 total hours billed by the firm, 17.7 were billed by Adam C. Reeves, Judge Reeves' son, and 1.00 was billed by S. Reeves, his daughter-in-law.

2. Between the dates of October 9, 2017 and November 15, 2017, the defendant, individually, consulted with the Stoll firm regarding issues related to his restitution obligation imposed at sentencing in the Eastern District of Virginia. Although billing records reveal that Adam Reeves, Judge Reeves' son, was consulted on one occasion for .40 hours, there is no indication that he billed for his time. Johnson's counsel contends that the issues on which Johnson, individually, sought the advice of counsel are unrelated to the facts forming the basis of the various alleged violations now before the court.

3. There is no further evidence of continued consultation with or representation by attorneys at Stoll and the record shows that any services concluded on December 15, 2017.

4. Counsel stated affirmatively that neither Adam Reeves nor S. Reeves will be witnesses at the final revocation hearing in this matter, regardless of which judge in the Eastern District might preside.

5. Counsel contends that the evidence of prior consultation is relevant to "show the full picture" of Johnson's character. The evidence will not be used to form the factual basis of a defense to the alleged violations now before the Court, as the issues on which he consulted were factually unrelated to the alleged violations. For example, Johnson is not maintaining that his conduct at the Winn Casino in Las Vegas was somehow based on the advice of counsel received from the attorneys with Stoll. Rather, counsel contends that evidence of this consultation will be admitted to establish that Johnson's conduct before the alleged violations was inconsistent with any alleged intent to deceive any government agent or officer, including his supervising probation officer.

At the hearing of April 19, 2019, counsel maintained that no condition exists that requires Judge Reeves to recuse under 28 U.S.C. § 455(b). For instance: 1) Judge Reeves does not hold a personal bias or prejudice concerning a party, or any personal knowledge of disputed factual issues; 2) he did not serve as a lawyer for any of the parties on the current issues while in private

3

practice before becoming a judge; 3) neither he nor any family member has a financial interest in the outcome of this proceeding, and 4) neither he nor any member of his family is anticipated to be called as a witness, or is a party to the proceeding, or has an interest in the outcome of the present action. *See* 28 U.S.C. § 455(b). Therefore, there is no existing condition that requires his recusal. Counsel further clarified that he is not moving for Judge Reeves' recusal but believes recusal would be appropriate. Counsel contends that due to Judge Reeves' son and daughter-in-law's prior involvement in consulting with Johnson and Curare Medical, LLC, between October and December, 2017, his impartiality might reasonably be questioned and, as a result, he should recuse, under the provisions of Title 28, United States Code § 455(a). However, should Judge Reeves decline to recuse, counsel asserts that Johnson will not argue that it was somehow an abuse of discretion. Thus, for purposes of the current issue, the undersigned construes Johnson's pleadings and statements at the hearing as a motion to recuse. However, for the reasons that follow, the undersigned will recommend that the motion be denied.

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 865 (1988). The test of whether a judge should recuse is one of objective reasonableness, that is, whether the judicial officer's impartiality might reasonably be questioned under the circumstances. *Lunde v. Helms*, 29 F.3d 367, 370 (8th Cir. 1994), cert. denied, 513 U.S. 1155 (1995). A judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street; and use of the word "might" in this section was intended to indicate that disqualification should follow if a reasonable man, were he to know all

the circumstances, would harbor doubts about the judge's impartiality. *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980), cert. denied, 449 U.S. 820 (1980). The requirement that a judge recuse from any proceeding in which his impartiality might reasonably be questioned does not require bias in fact and, instead, may require a judge to order that the case be transferred to another judge because of a mere appearance of bias. *Mandel v. Town of Orleans,* 233 F.Supp.2d 147, 149 (D. Mass. 2002).

However, judges are not to recuse themselves lightly under § 455(a). *U.S. v. Snyder*, 235 F.3d 42, 45 (1st Cir. 2000) (citing H.R.Rep. No. 93–1453, at 5 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355 ("[Section 455(a) ] should not be used by judges to avoid sitting on difficult or controversial cases."). The unnecessary transfer of a case from one judge to another is inherently inefficient and delays the administration of justice. *See Camacho v. Autoridad de Telefonos de Puerto Rico,* 868 F.2d 482, 491 (1st Cir. 1989) (noting that the judicial system would be "paralyzed" were standards for recusal too low). Therefore, "[a] trial judge must hear cases unless [there is] some reasonable factual basis to doubt the impartiality or fairness of the tribunal." *Snyder*, 235 F.3d at 46 (citing *Blizard v. Frechette,* 601 F.2d 1217, 1221 (1st Cir.1979)). Thus, under § 455(a) a judge has a duty to recuse himself if his impartiality can reasonably be questioned; but otherwise, he has a duty to sit. *Id.* at 46.

In this case Johnson maintains that Judge Reeves should recuse under § 455(a) in order to avoid even the appearance of impropriety. Johnson attempts to clarify this statement further by representing that should Judge Reeves decline to recuse, Johnson and his counsel will not argue that action to be an abuse of the judge's discretion. The United States, being fully advised of the basis for Johnson's position and having heard all arguments on the matter, affirmatively stated that

5

it did not see a condition which would call Judge Reeves' impartiality into question, and therefore sees no reason for him to recuse.

While certainly, there can exist circumstances under § 455(a) in which a judge should recuse from a matter to avoid the appearance of impropriety, since this section provides that a judge should disqualify himself in any proceeding in which his impartiality "might reasonably be questioned" the appearance of impartiality is virtually as important as the fact of impartiality. *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358,1361 (10th Cir. 1977). For instance, recusal is appropriate when a judge expresses a personal bias concerning the outcome of the case at issue. *United States v. Diaz,* 797 F.2d 99, 100 (2d Cir. 1986) (*per curiam*). Also, recusal is usually warranted when a judge has a direct personal or fiduciary interest in the outcome of the case, regardless of whether or not the judge is actually aware of that interest at the relevant times. *Liljeberg,* 486 U.S. at 859. In addition, disqualification could be warranted if a judge has had contemporaneous extrajudicial contact with a close relative of a party who has personal knowledge of outcome-determinative facts. *In re Faulkner,* 856 F.2d 716, 721 (5th Cir. 1988) (*per curiam*). However, where a case, by contrast, involves remote, contingent, indirect or speculative interests, disqualification is not required. *See In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1313 (2d Cir. 1988), cert. denied, 490 U.S. 1102 (1989); *accord In re Allied Signal Inc.,* 891 F.2d 974, 976 (1st Cir. 1989). For example, a judge's prior representation of one of the parties in a proceeding, does not automatically warrant disqualification. *National Auto Brokers Corp. v. General Motors Corp.,* 572 F.2d 953, 958 (2d Cir. 1978), cert. denied, 439 U.S. 1072 (1979). Likewise, a judge's graduation from and affiliation with a law school, which was a party defendant is not grounds for recusal, absent evidence that the judge was privy to extrajudicial information relating to student's situation at law school. *Easley v. University of Michigan Board of Regents,* 906 F.2d 1143, 1146–

47 (6th Cir. 1990) cert. denied, 499 U.S. 947 (1991); *Brody v. President of Harvard College,* 664 F.2d 10, 11 (1st Cir. 1981) (*per curiam*) (a judge having attended or graduated from a university which was party to a case, without more, is not grounds for recusal), cert. denied, 455 U.S. 1027 (1982).

A review of the facts of the instant matter reveal that, should Judge Reeves continue to hear the matter it would *at most* involve only remote, contingent, indirect or speculative interests, and disqualification is therefore not required. *See In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1313 (2d Cir. 1988), cert. denied, 490 U.S. 1102 (1989); *accord In re Allied Signal Inc.,* 891 F.2d 974, 976 (1st Cir. 1989). Judge Reeves' son and daughter-in-law billed a very modest number of hours while engaged as associates with the Stoll firm, and in the course of work done by members of that firm for Johnson or a company with which he was associated; neither was the lead attorney. There is no evidence that either received anything beyond their agreed upon salary from Stoll for the work they performed. Their work was of limited duration, concluding in December, 2017— nearly 15 months before the Johnson's monetary transfers and substantial losses while gambling in Las Vegas— and there is nothing to show that they possess knowledge of the violations alleged in this action. In addition, the work by Stoll was unrelated to his gaming account at a casino in Las Vegas, his gambling activities or the substantial losses he sustained in 2018 and 2019, or whether in fact he failed an obligation to report this activity to his supervising probation officer. Finally, their work does not create an interest in the outcome of the present matter. Whether Johnson's supervision is revoked, or whether he is exonerated of the charges will have no impact on Adam Reeves, S. Reeves, and Judge Reeves.

As a result, the undersigned agrees with the United States in this matter, that there is no "reasonable factual basis to doubt the impartiality or fairness of the tribunal", *Snyder*, 235 F.3d at 46, and therefore recusal under 455(a) is not warranted.

Therefore, having considered the matter, and being advised,

**IT IS RECOMMENDED** that the defendant's motion to recuse [R. 22] should be denied.

*****

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation.

This the 26th day of April, 2019.

Signed By:
*Edward B. Atkins*  EBA
United States Magistrate Judge